## August et al. v. Smith, Administratrix.

*Contract—Sales—Recovery of purchase money—Statement of claim—Act of May 19, 1915.*

In an action to recover back money paid as the purchase price of a carload of coal alleged to be unmerchantable, a statutory demurrer will be sustained where it appears from the statement of claim that the coal was sold f. o. b. at the mines, that the purchaser had ample opportunity to inspect it, but failed to do so, and the statement of claim does not aver any breach of warranty as to quality, or set forth the matters required by section 69, clause 3, of the Sales Act of May 19, 1915, P. L. 543.

Statutory demurrer. C. P. Jefferson Co., April T., 1921, No. 71.

*Pentz & Pentz,* for plaintiffs.

*Brown & Means* and *M. M. Davis,* for defendant.

CORBET, P. J., Dec. 5, 1921.—The determination of the questions raised depends on what is set forth in the statement of claim.

Reason *(a).* We agree that the averment referred to is immaterial, and, therefore, it is without effect.

Reason *(b).* "Quality of goods," as defined by the Sales Act of May 19, 1915, P. L. 543 (565), "includes their state or condition." Section 15, clause 2, of the act (P. L. 547), provides that "where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality." The statement of claim does not specifically, nor by necessary implication, aver as a cause of action the existence or breach of any such implied warranty, nor the existence and breach of any other warranty, either express or implied.

Reason *(c).* This brings us to a consideration of the specific matter alleged to have been breached, and the manner of the alleged breach. Plaintiffs allege that on Oct. 15, 1920, they purchased from defendants' intestate, on and by written order, a carload of merchantable and marketable coal, which was subject to inspection and rejection. Looking, then, to the terms of the sale as disclosed by the order (and that the terms of the latter were in any way added to, altered, changed or enlarged is not in any way averred, by reason whereof we are to look to the order alone for the terms of the purchase), we find its substance to be: "Please make the following shipment,

1 D. & C.

viz.: B & M (Boston & Maine) 1 car, size R M (Run of Mine) Price $7.85, F. O. B. (Free on Board) mines, Consigned to ——, Destination ——, Subject to inspection and rejection. Remarks: Filled by car P. R. R. 195834." Nothing is therein said that the coal should be merchantable and marketable, nor is any place designated as "the point of inspection." The place of delivery is clearly indicated to be on board the car at seller's mines.

Plaintiffs further allege that the carload of coal was shipped in Pennsylvania Railroad Car No. 195834, that the quantity was seventy-eight tons, three hundred weight, for which they were to pay $7.85 per ton, at which price the car of coal was of the value of $613.48, and that, being spot coal, it was to be paid for upon consignment by the seller to the consignee directed by the plaintiffs, the Boston & Maine Railroad, and delivery to the plaintiffs of bill of lading of the Pennsylvania Railroad showing said consignment; that said coal was consigned by the seller on said order, and that plaintiffs did not see the coal or have anything to do with the loading of it. And the plaintiffs paid the seller, for it is necessarily implied from the fact that plaintiffs are seeking to recover the price paid. Thus plaintiffs clearly show that the seller delivered the coal to them (first paragraph, section 46, of the Sales Act of May 19, 1915, P. L. 543, 556), that the property in it passed to them (section 19, rule 4, clause 2, of the Sales Act; also same section, rule 3, clause 2, paragraph (a), that they accepted it (section 48 of the act), and that they paid the seller for it.

What of the notation on the order, "Subject to inspection and rejection?" Plaintiffs aver that on account of the congested condition of traffic on the various railroads over which the coal had to travel to reach destination, it did not arrive at the (wholly undesignated and unnamed) point of inspection until Dec. 6, 1920, at which time it was duly inspected (where and by whom?) and found to be unmerchantable and unmarketable and not fit for use, of which fact plaintiffs notified the seller upon the refusal of said car of coal (by whom?), and notified her that if she did not take said coal over and dispose of it, they would be compelled to sell it for the best price they could obtain for it, and, upon the seller receiving said notice, she refused to have anything to do with the carload of coal, and notified the plaintiffs it was their property and at their disposal. Whereupon they, the plaintiffs, were compelled to sell it in the market at the best price they could obtain, and it did not bring more than sufficient to pay freight and demurrage charges, whereby they lost the entire amount paid by them to the seller for the coal.

It is provided in the Sales Act, section 69, clause 3 (P. L. 563): "Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return, or to offer to return, the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer."

Compliance with these requirements is not averred by the plaintiffs.

Plaintiffs, at the time of the transaction, were engaged in buying and selling coal at Brockwayville, Jefferson County, Pennsylvania, and the seller was living and doing business at Reynoldsville, in the same county, places fifteen to sixteen miles apart, and plaintiffs had a reasonable opportunity, had they so desired, of examining or inspecting and rejecting the coal before they accepted and paid for it and directed it to be shipped for them to their consignee, the Boston & Maine Railroad, with which the seller had nothing whatever to do. They do not aver they did not have such opportunity, but merely

say they "did not see said coal or have anything to do with the loading of the same, but purchased the same from the defendant upon said order, . . . giving directions for the shipment thereof to the Boston & Maine Railroad, which said coal was consigned by the defendant on said order."

From what has been said, it is not deemed necessary to specifically consider reasons *(d)* and *(e)*.

The conclusion of the court, upon a careful consideration of the whole matter, is that the plaintiffs have not set forth a good and sufficient cause of action, and that judgment should be entered in favor of the defendant upon the questions of law raised by her affidavit of defence.

And now, Dec. 5, 1921, after hearing and due consideration of the questions of law raised in the affidavit of defence, in the opinion of the court, the decision of such questions of law disposes of the whole of the claim, and judgment is now entered for the defendant.

From Raymond E. Brown, Brookville, Pa.